COFFIN et al. v. GREEN et al.    (No. 6069.)

(Court of Civil Appeals of Texas. San Antonio. June 15, 1918.)

1. COMPROMISE AND SETTLEMENT ⊜⟶23(3) — EVIDENCE—SUFFICIENCY.

Evidence *held* insufficient to establish an oral contract of settlement between the parties by which a pending suit was to be dismissed and attached cotton taken by defendant at a specified price.

2. APPEAL AND ERROR ⊜⟶843(2)—REVIEW— UNNECESSARY QUESTIONS.

It is unnecessary to determine the effect given to the jury's answer to a special issue concerning agreement by defendant to hold goods in warehouse, where neither such agreement nor claim for breach thereof were pleaded, and the cause must be reversed on other grounds.

Appeal from District Court, San Patricio County; F. G. Chambliss, Judge.

Suit by Mrs. Eilleen Green and another against William Coffin and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Beasley & Beasley and L. D. Stroud, all of Beeville, for appellants. R. P. Coon, of San Antonio, and M. A. Childers, of Sinton, for appellees.

MOURSUND, J. This is a suit filed September 23, 1916, by Mrs. Eilleen Green, joined by her husband, against the copartnerships, Coffin & Son and John S. Wagnon & Co., and the individuals composing said firms, in which plaintiffs alleged that defendants caused a levy to be made upon 30 bales of cotton, the separate property of Mrs. Green, weighing in the aggregate 15,000 pounds, and worth 10 cents a pound, and that said defendants took possession of the cotton, and in October, 1914, informed plaintiffs of such possession; that during said month an agreement was made between plaintiffs and defendants, whereby defendants were to take said cotton and sell or use same, and to deliver to plaintiffs the proceeds thereof, less such obligations, if any, as were due defendants by plaintiffs, and guaranteed that they would pay plaintiffs 10 cents per pound for such cotton. They also alleged that during the month of November defendants came to plaintiffs' home and informed them that they were going to sell said cotton at public sale during said month, but failed and refused to disclose to plaintiffs when and where such sale would be made, but told plaintiffs they would be personally liable for said cotton, and promised plaintiffs they would see that said cotton was disposed of at the reasonable market value of same;

that said cotton was in their possession, and that plaintiffs need not pay any attention to the matter, but that they would handle the same and see that it sold at its market value, to wit, $1,500, and the proceeds of said sale delivered to plaintiffs; that they relied upon such representations, and did not thereafter undertake to look after the cotton and protect their interests. A comparison of the allegation as to the conversation during the month of November, 1914, with paragraphs 4 and 7 of the original petition and paragraphs 4 and 7 of the first amended petition discloses that in said first two petitions the transaction alleged to have taken place in November was relied upon, and no such contract as is alleged in the petition on which the case was tried, as having been made in October, was pleaded in either of said first petitions. They alleged, further, that about December 12, 1914, defendants converted said cotton and the proceeds thereof to their own use and benefit. It was alleged on information and belief that defendants had sold the cotton for 10 cents per pound. Plaintiffs prayed for judgment for $1,500, with interest. In the alternative they prayed that if the agreement could not be enforced, then that they have judgment for the reasonable market value of the cotton, which was alleged to have been the same as the price alleged to have been guaranteed by defendants.

Coffin & Son, and the individuals composing the firm, answered by general and special exceptions, a general denial, a special answer to the effect that if they took possession of the cotton under any process it was by virtue of a writ of attachment issued in cause No. 1674, wherein the defendants (presumably Coffin & Sons) were plaintiffs and plaintiffs herein were defendants, which writ was levied on the cotton on August 28, 1914; that plaintiffs defended said suit and set up a cross-action for damages for wrongful attachment, which was decided adversely to them in the judgment rendered in said cause on October 22, 1914; that the judgment thus rendered has not been appealed from; and that all matters involved in this suit were adjudicated in said former suit. Said defendants invoked the statute of two-years limitation on the theory that the cause of action pleaded by plaintiffs arose on August 28, 1914, more than two years from the filing of the suit; also on the theory that the contract relied on was not pleaded until October 5, 1917, more than two years after the cause of action arose which was attempted to be based on such agreement. Said defendants also pleaded that the former suit was prosecuted and defended after such agreement was made, if any was made, and thereby the agreement was repudiated, and therefore the cause of action based thereon was barred by limitation of two years. They prayed that, if any judgment should be rendered against them, the same be credited with the judg-

ment rendered in their favor in cause No. 1674.

By supplemental petition plaintiffs alleged that the agreement pleaded in their original petition was made "about the 28th, 29th, or 30th of October, 1914," after the filing of suit No. 1674, and after plaintiffs had answered therein, and that the agreement included a provision that the suit would be dismissed, or, if judgment had been taken, the same would be released; that if the cotton was sold by any officer, it was in violation of the agreement, and if any such sale was made it was void for the reason that notice thereof was not given for the time prescribed by law; that the 30 bales of cotton were left in the possession of defendants for adjusting the indebtedness of plaintiffs to Coffin & Son in the sum of about $88 and Wagnon & Co. in the sum of about $300; that the matter involved in this suit has never been adjudicated; that if there was any trial of the former suit it was in violation of the agreement and without notice to plaintiffs.

Defendants Coffin & Son, by supplemental answer, again urged the two-year statute of limitation on the theory that by adding the allegations with regard to the agreement providing for dismissal of the former suit, a new cause of action was pleaded.

The suit was dismissed as to Wagnon & Co., and the individuals composing said firm, and as between plaintiffs and the other defendants was submitted upon special issues, those contained in the general charge, and the answers thereto, being as follows:

"(1) At the time the plaintiffs and the defendants were undertaking to settle the matters of difference between them and which resulted in the alleged contract sued upon:

"(a) Were the suits brought by Coffin & Son and Wagnon & Co. then pending against plaintiffs to be dismissed? Answer: Yes.

"(b) Did Coffin & Son insist that Mrs. Green pay the debts due by the Mexican tenants? Answer: Yes.

"(c) Did Mrs. Green agree to pay the debts of the Mexican tenants? Answer: No.

"(d) Was Mrs. Green to execute notes payable to Coffin & Son and Wagnon & Co. in full or part payment of the debts due them? Answer: Yes, in part payment.

"(e) If you have answered the foregoing question in the affirmative, then answer: Were such notes ever executed and tendered to Coffin & Son and Wagnon & Co.? Answer: No.

"(f) Were Coffin & Son to place the cotton in the warehouse and sell the same only when instructed to do so by Mrs. Green? Answer: Yes.

"(g) Were Coffin & Son to see that the cotton was not sold for less than 10 cents per pound? Answer: Yes.

"(h) If Coffin & Son agreed to place the cotton in the warehouse and not to sell same until instructed to do so by Mrs. Green, or not to sell the cotton for less than 10 cents per pound, was it upon the condition that the accounts of the Mexican tenants be paid? Answer: Yes.

"(i) Was it understood between the parties that their agreement, if any, to settle the matters of difference between them was to be reduced to writing and signed before it should become binding upon them? Answer: No.

"(j) Did Coffin & Son understand that the

agreement, if any, to settle the matters of difference between them and the plaintiffs was to be reduced to writing and signed before it should become binding upon the parties? Answer: No.

"(k) Was the agreement, if any, ever reduced to writing and signed by the parties? Answer: No.

"(2) Were the negotiations between the parties plaintiff and defendant, looking to the settlement of the matters of difference between them, had before, or were they had after, the judgment was rendered in cause No. 1674 on October 22, 1914? Answer: After October 22, 1914.

"(3) In whose control and possession was the cotton prior to the time of its sale under foreclosure on December 12, 1914? Answer: Coffin & Son.

"(4) What do you find to be the gross weight of the thirty (30) bales of cotton the subject-matter of this suit? Answer: 14,550 pounds."

The following issues were given at the request of plaintiffs:

"(1) Did plaintiffs ever agree or consent for the sale of said thirty bales of cotton in controversy herein? Answer: No.

"(2) What was the market price of cotton, in Mathis, San Patricio county, Tex., on the date same was taken over by the defendants, in December, 1914? Answer: 6⅝ cents per pound, or total of $963.94."

Upon such verdict judgment was rendered in favor of plaintiffs against Coffin & Son, and the members of said firm for $1,702.35, being the value of the cotton, 14,550 pounds, at 10 cents per pound, and interest on said value from December 12, 1914, to date of trial.

[1] It is contended that the evidence fails to support a finding that such a contract as was pleaded by plaintiffs and made the basis of the judgment was in fact made, and that the verdict itself discloses that the minds of the parties did not meet. There was no proof of any such contract as was pleaded, namely, a contract to pay 10 cents per pound for the cotton in consideration that the amounts of the obligations, if any, as were actually due by plaintiffs to defendants should be retained by defendants out of the purchase price of the cotton. Such a contract would imply that the amount of the obligations justly due would be determined by the courts, otherwise it would not be a contract, as it would require a further agreement as to such amounts. As a matter of fact, as disclosed by the testimony of all the parties, it was never even proposed that a contract be made by which the amounts due by Mrs. Green were to be judicially ascertained. The efforts of the parties were directed towards effecting an agreement as to the amounts which were to be charged against her, provided the defendants would take the cotton at 10 cents per pound.

The principal facts are as follows: Mr. Green had placed 9 bales of cotton on the station platform to ship to Houston, and Coffin & Son brought a suit in the justice's court on certain items, and attached such cotton. Thereupon he and Mr. Miller, a brother of Mrs. Green, went to see Mrs. Green, and Miller, being of the opinion that Green was trying to dispose of his wife's cotton, urged her to protect Coffin & Son, one of the Coffins being her brother-in-law, and Wagnon & Co. It was decided that attachments should be levied on the entire crop, and in order to do this suits were filed in the district court, the one by Coffin & Son being numbered 1674, and that by Wagnon & Co., 1675. Attachments were issued and levied on the crop, and the expenses of picking and ginning paid by Coffin & Son. One of the Coffins testified he had been out in handling the cotton $946.40, and $75 for ginning and weighing. This was not disputed. It appears that a few days after the attachment was issued out of the district court, which was about August 28, 1914, defendants had a conversation with Mrs. Green, in which, according to Coffin's testimony, they told her they would hold the cotton until she saw if the market justified them in selling, and she was to come in and have a written agreement as to how it would be settled." Mrs. Green said they told her they would store the cotton in a warehouse until she said they might sell it. Again she said they stated they would put it in a warehouse and sell it when it went up. Negotiations looking to a settlement were entered into, and a meeting had at Wagnon's store for the purpose of entering into a written contract of settlement. It appears that Mrs. Green contended she only owed $88 to Coffin & Son, while they claimed she was indebted in a considerable additional sum for goods delivered to tenants. She did not testify that Coffin ever agreed that he would only deduct $88, nor did she say that she ever agreed that he might deduct the full amount claimed by him. She did not recollect that she had ever agreed to pay the claims other than the $88. At the meeting at Wagnon's store, an agreement was written out by Paden, in the presence and with the assistance of Mrs. Green as to the terms to be embraced therein. This instrument was delivered to her to be taken home and signed by her and her husband. It appears that this written agreement provided for a note to be given by Mrs. Green in part payment of her obligation to Coffin & Son and Wagnon & Co. She did not state, nor did any one else state, how much she was to be charged with in favor of Coffin & Son, under the terms of said agreement, but it may reasonably be inferred that it was not merely $88, as it is not probable that Coffin & Son would go to so much trouble to collect $88 and then take a note for part of it, or that she would demand a settlement involving the giving of a note. The agreement was never signed, or at least never returned to the other parties for their signatures. There is no contention, and can be no contention, that up to this time any agreement was ever consummated. The jury's findings

in answer to subdivisions (i) and (j) of issue No. 1 are not supported by the evidence. There is no evidence of any subsequent meeting or contract, unless it be presumed there was because the parties do not agree as to the date of the meeting at Wagnon's. Each side testified only to one meeting for the purpose of drawing an agreement or reaching an agreement, and Mrs. Green's testimony throughout shows that at such meeting the agreement was reduced to writing. Her final summary is as follows:

"After making trips to town in an effort to settle these accounts, I went in to see my brother-in-law, and took bills of sale and released so many bales of cotton, and he was to return the rest of it, and we made the agreement for 10 cents,' and for me to pay so much and for them to return the rest of it and to give a note, with interest, for the rest of it. All these agreements were in writing."

She does not deny that she and her husband refused to sign the written agreement; and, while she speaks of bills of sale, it does not appear that any bill of sale was ever delivered. In her brief the contention is made that there was a subsequent meeting at Wagnon's store in which a verbal agreement was consummated. This is urged in order to avoid the proposition that the attempt to make the agreement in writing fell through. As stated, there is no evidence of any subsequent meeting or verbal contract made after her failure to return the written agreement. Coffin stated that when she failed and refused to sign the agreement he told her the suit would have to go on, and she did not deny such testimony. She makes the further contention in her brief that the minds of the parties met, in that Mrs. Green told Coffin she would only deduct $88, and that he took possession of the cotton and had it sold, and thereby accepted her proposition. No such contract is pleaded, and besides the theory rests upon the erroneous assumption that possession was taken by Coffin of the cotton pursuant to such a proposition by Mrs. Green. The cotton was attached before the parties ever had any dispute as to the amount, so far as the record discloses. It was taken possession of by the constable under writs of attachment, and was kept by him in a warehouse until he sold it under order of court issued in said cause No. 1674, under a judgment rendered on October 22, 1914, and entered on October 28, 1914. That case was defended in behalf of Mr. and Mrs. Green by an attorney employed by Mr. Green, who pleaded a general denial, and especially denied the allegations regarding sale of merchandise to Mrs. Green for her tenants, and who also interposed a plea of limitation, and pleaded in reconvention for 'damages for' alleged wrongful issuance of attachment. He succeeded in reducing Coffin & Son's demand considerably, but judgment was rendered for plaintiffs for $62.67 against Green and for $489.45 against Mrs. Green and her husband, and for foreclosure of the attachment lien. He filed a motion for new trial on October 31, 1914, which was overruled the same day. An effort to effect a settlement was made by Coffin & Son, through their attorney, but no agreement could be reached, so the cotton was sold under order of sale, and bought in for Coffin & Son for $346.01 on December 12, 1914. Although notice of appeal was given, no appeal was perfected, and the judgment has not been set aside by direct attack, and cannot be held for naught in a collateral suit.

As the testimony, even of Mrs. Green, shows that no agreement such as was pleaded was ever made, it is unnecessary to discuss whether the transactions testified to by her, and relied on by her, took place before or after the trial of cause No. 1674, or to discuss the merits of defendants' plea of res adjudicata.

No testimony was adduced in support of the plea that in November, 1914, statements were made which induced Mrs. Green to take no interest in the sale of the cotton, and enabled Coffin & Son to buy it at an inadequate price.

[2] The question designated as subdivision (f) of the first issue does not relate to the contract sued upon by plaintiffs, but to a preliminary agreement, which was made in contemplation of arriving at an agreement settling all matters in dispute. It is unnecessary to determine what effect is to be given to the jury's reply thereto, for no such agreement is pleaded, and no claim of conversion for breach of such an agreement is contained in the pleadings.

We conclude that the judgment should be reversed, and judgment rendered that plaintiffs take nothing by their suit.

Reversed and rendered.